

# In the
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

---

No. 06-25-00149-CR

---

JEREMY MICHAEL WISSMAN, Appellant

V.

THE STATE OF TEXAS, Appellee

---

On Appeal from the 5th District Court
Cass County, Texas
Trial Court No. 2024F00209

---

Before Stevens, C.J., van Cleef and Rambin, JJ.
Memorandum Opinion by Chief Justice Stevens

# MEMORANDUM OPINION

Jeremy Michael Wissman was found guilty by a Cass County jury of possession of a controlled substance in penalty group one, one gram or more but less than four grams, a third-degree felony. *See* TEX. HEALTH & SAFETY CODE ANN. § 481.115(c) (Supp.). After finding the enhancement paragraph true, the jury sentenced Wissman to twenty years' incarceration. Wissman argues on appeal that his right against self-incrimination was violated when the trial court "unduly interfered with [his] absolute right to make his own decision regarding whether to testify or not." Because we find that Wissman's right against self-incrimination was not violated, we affirm the trial court's judgment.

## I.      Admonishments

Wissman contends that the following exchange influenced his ultimate decision to testify and, therefore, denied him the right to make an independent decision whether to testify:

ADMONISHMENT OF [WISSMAN]

BY [WISSMAN'S COUNSEL]:

> Q.      Mr. Wissman, we've discussed the fact that you have competing constitutional rights in this matter. You have a right to testify and tell your side of the story. You also have an absolute right against self-incrimination and to not take the stand in this case. I've told you both of those things, correct?
>
> A.      Yes, sir.
>
> Q.      And I have advised you that I think at this stage of the trial that you are much better off if you do not take the stand at this stage. I'm not talking about if there is a second stage or not, but at this stage, I think you're in much better shape if you don't take the stand. So my advice to you is to not take the stand. Is that what I told you?
>
> A.      That's what you told me.

2

Q.     Okay.  And are you okay not taking the stand and following my advice?

A.     I mean, I ain't got nothing to hide.  If they need to ask me anything, they need to ask me.  I'm willing to test --.  I'm willing to answer them.  But shoot, I got a right to speak, and that's what I want to do is be heard.  And they got the right to ask me whatever they need to ask me.

Q.     So are you okay if I do not call you to the stand in your defense at this stage of the trial?

A.     In my defense, no.  I would like to defend.  And like I said, who better to defend me than you and myself?  If you're not going to say anything, you know --.  I have nothing to hide.  Anything that they're going to ask me, I'm more than willing to answer them 100 percent, without a doubt, whether it incriminates me or not.  It's the truth, the whole truth, and nothing but the truth as sworn in.  I've got a job to do just like you.  And so, I mean --.  If that answers your question.  I'm not sure where we're going with this.

Q.     The question is, are you okay if I don't call you to the stand?

A.     No, I'm not --.  I mean, if the DA is --.  If the prosecutor --.  That's their job.  They're needing to do it.  They've got a job to do as well.  So whatever questions they got to ask that could help me or impeach me --.  I mean, it could work both ways.  I mean, I'm not willing to hide anything.  I'm gonna let it all be out there in the open.  So if they need me to testify, I'm gonna testify.

Q.     And so, if they call you, that's a different thing than if I call you, --

THE COURT:          Wait.

Q.     ([By Wissman's Counsel])     -- correct?  So I don't have to call you, correct?

A.     I mean, you can call me all you want, but I believe the Judge --.  It's his court.  So he's got the final ruling, you know.  Like I said, he's more than powerful enough to --

[BY WISSMAN'S COUNSEL]:      Your Honor, at --

A.     I mean, I --.  Trust me.

3

[BY WISSMAN'S COUNSEL]: Your Honor, at this point, I would not call him, and I would object if the [S]tate attempted to call him --

A. I didn't --

[BY WISSMAN'S COUNSEL]: -- based on my client's constitutional right against self-incrimination.

[BY THE STATE]: Your Honor, do I get a chance to cross?

THE COURT: No. No, sir, you don't.

[BY THE STATE]: On just this issue?

THE COURT: No, sir, you don't.

[BY THE STATE]: Yes, sir.

THE COURT: Mr. Delk, I'm not quite sure what to make of that admonishment that you just made to your client. And I understand, I think, why you've asked the questions that you've asked. But I think every person is entitled to make that decision as to whether they want to testify in their own defense or not. And I appreciate you asking the question about whether he would not want you -- whether he would be upset if you didn't call him, but I think it's clear from his statements that he wants to testify on his own behalf.

[BY WISSMAN'S COUNSEL]: Not to be --

THE COURT: Now --

[BY WISSMAN'S COUNSEL]: Not to be disagreeable --

THE COURT: I'm just trying to make sure that the record's clear. From the Court's interpretation of what Mr. Wissman just said, he did not seem to have any problem taking the stand and defending himself. And so, --

4

[BY WISSMAN'S COUNSEL]: My interpretation was, Your Honor, he was willing to answer questions if he was called. They have not --

THE COURT: I'm just --

[BY WISSMAN'S COUNSEL]: I didn't hear an affirmative assertion that he wanted to take the stand.

THE COURT: I'm --. Y'all can discuss it. And I understand that y'all will proceed based upon -- you'll proceed based upon what you think's [sic] in your client's best interest.

[BY WISSMAN'S COUNSEL]: Your Honor, can we go to the back --

THE COURT: And yet --

[BY WISSMAN'S COUNSEL]: -- for about [four] minutes?

THE COURT: If y'all need some time to talk about it, I'll give you some more time to talk about it.

[BY THE STATE]: Your Honor, can I --? Before we do that, can I ask the Court, based on the prior motion in limine that the Judge -- that the Court ruled on regarding any extraneous offenses of the defendant, if the defendant does choose to testify --

THE COURT: Well, certain --. If he --. If the defendant takes the stand, you're entitled to ask about his criminal history, you're entitled to ask about other relevant issues.

[BY THE STATE]: Yes, sir.

THE COURT: And certainly his criminal history would be one of them.

[BY THE STATE]: Yes, sir.

[BY WISSMAN'S COUNSEL]: That opens the door.

5

THE COURT:        But --

[WISSMAN]:        With all due respect, --

THE COURT:        -- I hadn't heard that yet.

[WISSMAN]:        -- is it going to help my case?

[BY THE STATE]:   I just wanted to make sure we were clear on that.

THE COURT:        All right.  We're going to take a quick recess.  Mr. Wissman, if you'll step back with [your counsel].

After a brief recess, the trial court allowed further admonishment of Wissman, which went as follows:

BY [WISSMAN'S COUNSEL]:

Q.     Mr. Wissman, you and I discussed this.  You have an absolute right to testify.  You also have a constitutional right against self-incrimination.  I've explained to you that the [S]tate cannot call you to testify.  I'm the only one that can call you to testify.  Is that correct?

A.     Yes.

Q.     And I have told you that if you insist on testifying, that I have to let you testify.  Is that correct?

A.     Yes.

Q.     And I have told you I have no questions to ask you, if you insist on me calling you to testify, that I believe will help you.  So I can call you to testify, but I will not be asking any questions of you should you determine that you're going to testify.  Have I explained that to you?

A.     Yes.

Q.     Regardless of whether I ask you any questions, if you take the stand, you understand the [S]tate can ask you any question it wants to in cross examination?

6

A.     Yes, sir.  And we have that right as well, correct?  You didn't express that to me, but that was my concern.  We have the right to cross examine the [S]tate and ask them questions and to answer our questions.

Q.     We've cross examined every witness who's been brought by the [S]tate to this point.  And it is your decision after that consultation that you wish --

A.     I --

Q.     It is your decision --.  Unless you've changed your mind since we've got out here.  It is your decision that you want me to call you to the stand when the jury returns.

A.     Yeah.

Q.     Okay.  Is that your decision?

A.     Yes.  If they got anything to ask me, then I'm gonna let them ask me.  I mean, [the State], the video and the evidence is at hand.  I mean, like I said, there's some things in that video and stuff that need to be brought to the attention.  He's concerned about the weight and this and that and whatnot, but all this other stuff that you told me, hey, you're -- I'm committing suicide.  I mean, I don't know what that was about.

Q.     Specifically, I told you that I believe you're committing legal suicide by taking the stand.  That's the exact terminology I used.

A.     Right.

Q.     I think what chance you have of a not guilty verdict will be completely gone if you take the stand.  That was my advice to you, was it not?

A.     That was your advice to me.  And I specifically said, whatever they've got to ask me --.  This has been an ongoing repeating thing.  So if they're going to ask me any questions, I'm going to answer them honestly, because that's what we're here to do is get to the bottom of this ongoing truth of the matter.  Hi, my name is Jeremy.  I'm a dope feign [sic].  Nice to meet you.

[BY WISSMAN'S COUNSEL]:     Your Honor, I know nothing else other than I've given him my admonishment.  I've given him --

7

THE COURT:    All right.

[BY WISSMAN'S COUNSEL]:    -- that, and that's where we are.

THE COURT:    Okay.

Defense counsel then called Wissman to the stand.

## II.    Preservation and Fundamental Error

The State argues that Wissman failed to preserve his complaint on appeal because he was required to object to the trial court's comments that he now complains about in order to preserve error. However, the State also discusses that the type of error complained of by Wissman can be reviewed as fundamental error, which need not be brought to the attention of the trial court for preservation. *See* TEX. R. EVID. 103(e) ("In criminal cases, a court may take notice of a fundamental error affecting a substantial right, even if the claim of error was not properly preserved.")

On appeal, Wissman argues that the trial court's comments interfered with his right to make his own decision as to whether or not to testify on his own behalf. While "counsel has not attempted to invoke the fundamental error concept embedded in Rule 103(d) of the Texas Rules of Evidence," and while rarely applied, "[t]he rule allows a reviewing court to reverse fundamental error that was not objected to." *In re A.D.*, 287 S.W.3d 356, 362 (Tex. App.—Texarkana 2009, pet. denied) (citing TEX. R. EVID. 103(e)). Because Wissman complains that his constitutional right against self-incrimination was affected by the undue interference of the trial court, we will review for fundamental error.

8

### III. No Coercion to Testify

Wissman complains on appeal that his right to make his own decision whether or not to testify in his defense was unduly influenced by the comments of the trial court during his admonishment. He specifically takes issue with the trial court's statement: "From the Court's interpretation of what Mr. Wissman just said, he did not seem to have any problem taking the stand and defending himself."

"A defendant has a right to testify at his own trial, and such a right is fundamental and personal to the defendant." *Lee v. State*, 639 S.W.3d 312, 317 (Tex. App.—Eastland 2021, no pet.) (citing *Johnson v. State*, 169 S.W.3d 223, 232 (Tex. Crim. App. 2005)). "A defendant's right to testify at trial is a fundamental constitutional right." *Id.* (citing *Rock v. Arkansas*, 483 U.S. 44, 52–53, 53 n.10 (1987)). "It is derived from the Fifth and Sixth Amendments to the United States Constitution, is personal to the defendant, and cannot be waived by counsel." *Id.* (citing *Rock*, 483 U.S. at 52–53). "However, a defendant may knowingly and voluntarily waive this right." *Id.* (citing *Smith v. State*, 286 S.W.3d 333, 338 n.9 (Tex. Crim. App. 2009) (citing *Emery v. Johnson*, 139 F.3d 191, 198 (5th Cir. 1997))). "Trial counsel bears the primary responsibility to inform a defendant of his right to testify, but the ultimate decision of whether he testifies belongs to the defendant." *Id.* (citing *Johnson*, 169 S.W.3d at 235).

The standard of review for a complaint such as Wissman's was addressed by our sister court in Austin. *See Jones v. State*, 691 S.W.3d 231, 239 (Tex. App.—Austin 2024, pet. ref'd). There, the court explained,

> Neither the [Texas] Court of Criminal Appeals nor our Court has stated precedentially what standard should apply to a complaint like Jones's—where

9

comments by the trial court are allegedly what infringed the defendant's right to testify or prevented any waiver of the right from being voluntary. We have reviewed federal and state decisions from Texas and from around the country for analysis of complaints like Jones's. Based on that review, we conclude that a complaint like Jones's should be reviewed for whether the trial court's comments coerced the defendant into not testifying. Many courts who have evaluated complaints like Jones's have invoked the coercion standard when deciding whether the right was infringed, or not voluntarily waived, because of challenged comments by the trial court. *See United States v. Tull-Abreu*, 921 F.3d 294, 303 (1st Cir. 2019); *United States v. Webber*, 208 F.3d 545, 552–53 (6th Cir. 2000); *Marks v. Davis*, No. 11-CV-02458-LHK, 2016 WL 5395958, at *12 (N.D. Cal. Sept. 27, 2016) [(order)]; *People v. Roman*, No. F039818, 2003 WL 22390084, at *10–11 (Cal. Ct. App. Oct. 20, 2003) [(not designated for publication)]; *Apodaca v. People*, 712 P.2d 467, 472 (Colo. 1985); *Bailey v. State*, 559 So.2d 604, 606–07 (Fla. Dist. Ct. App. 1990); *Tachibana v. State*, 900 P.2d 1293, 1302 n.5 (Haw. 1995) (citing *State v. Silva*, 890 P.2d 702, 711 (Haw. Ct. App. 1995), *approved of in part & overruled in part on other grounds by Tachibana*, 900 P.2d at 1302 n.5); *Woolfolk v. Commonwealth*, 339 S.W.3d 411, 416–17 (Ky. 2011); *State v. Driskill*, 459 S.W.3d 412, 428–29 (Mo. 2015); *People v. Vanluvender*, 35 A.D.3d 238, 827 N.Y.S.2d 22, 23–24 (N.Y. App. Div. 2006); *F.C.L. v. Agustin*, 271 Or.[ ]App. 149, 350 P.3d 482, 486–89 (2015); *Lee*[, 639 S.W.3d at 317–18]; *see also United States v. Goodwin*, 770 F.2d 631, 636–37 (7th Cir. 1985) (trial court's comments did not coerce defendant into testifying); *Medley v. Stephens*, No. 2:07-CV-051, 2013 WL 3989070, at *18–22 (N.D. Tex. Aug. 5, 2013[, orig. proceeding]) [(order)] (same); *State v. Carter*, No. 2003-478, 2004 WL 5582079, at *1–2 (Vt. Nov. 1, 2004) (unpublished entry order) (same).

*Id.* We adopt the same position in Wissman's case, and therefore, we now address whether the trial court's comments coerced Wissman into testifying.

In reviewing the admonishments given to Wissman by his counsel and the trial court's comments, we cannot conclude that the trial court coerced Wissman into testifying. In our review, Wissman consistently indicated his desire to take the stand during the initial admonishment, stating "But shoot, I got a right to speak, and that's what I want to do is be heard" and stating that he would not be "okay" with his counsel failing to call him to the stand, noting "I would like to defend. And like I said, who better to defend me than you and myself?"

10

Wissman's counsel, at the close of the initial admonishment, indicated that he would not be calling Wissman to the stand, and the trial court, having concerns that Wissman indicated he would like to testify, allowed for a discussion between Wissman and his counsel off the record. After the recess, Wissman's choice to testify did not change. Even though it was against the advice of his counsel, Wissman clearly stated it was his decision to take the stand.

The record clearly reflects that the trial court and Wissman's counsel informed Wissman that it was his decision to make—not that of the trial court or Wissman's trial counsel. "The tenor of the trial court's questions and remarks . . . was neither overbearing nor coercive as [Wissman] suggests." *Lee*, 639 S.W.3d at 318 (footnote omitted) (citation omitted) (citing *Garza v. State*, 248 S.W.3d 742, 744–45 (Tex. App.—Houston [1st Dist.] 2008, no pet.) ("addressing warnings given by the trial court to a witness about the perils of testifying")). Accordingly, we overrule Wissman's sole issue.

## IV.    Conclusion

We affirm the trial court's judgment.

Scott E. Stevens
Chief Justice

Date Submitted:    July 13, 2026
Date Decided:      July 30, 2026

Do Not Publish

11